# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEPHEN L. WEIS AND DONNA H. WEIS,
as Co-Special Administrators and Representatives
of the ESTATE of LEONARD WEIS, and
WEIS EARTH SCIENCE MUSEUM, INC.,

        Plaintiff,

    v.                                Case No. 10-C-1168

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN
SYSTEM, JAMES W. PERRY,
UNIVERSITY OF WISCONSIN FOX
VALLEY FOUNDATION,
INC., OUTAGAMIE COUNTY, and
WINNEBAGO COUNTY,

        Defendants.

## DECISION AND ORDER

This action arises out of a dispute over ownership and control of the Weis Earth Science Museum, which is housed on the campus of the University of Wisconsin-Fox Valley ("UWFox")in Menasha, Wisconsin. Plaintiffs Leonard Weis (now deceased) and Weis Earth Science Museum, Inc., have asserted state and federal unconstitutional takings claims, along with various other state law claims, against the Board of Regents of the University of Wisconsin System, UWFox Dean James W. Perry, and University of Wisconsin-Fox Valley Foundation, Inc. ("the Foundation"). Plaintiffs also seek declaratory and injunctive relief. Winnebago and Outagamie Counties are named as necessary parties because they are allegedly owners of the real estate and improvements upon and within which the Museum and its assets are located.

Though originally filed in state court, the case was removed pursuant to 28 U.S.C. § 1441 with an assertion of federal jurisdiction under 28 U.S.C. §§ 1331 and 1343. The case is before the Court on the motion of Board of Regents and Dean Perry (collectively, "the State Defendants") for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6). As to the Board of Regents, the motion seeks dismissal of each of the state law claims on the ground of sovereign immunity. It seeks dismissal of the complaint in its entirety against Dean Perry.

## I. BACKGROUND

The allegations of the complaint, taken as true for now, provide the facts upon which the motion to dismiss must be decided. *See United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007) ("In ruling on a motion to dismiss, we construe all well-pleaded allegations of the petition as true and draw all reasonable inferences in favor of the plaintiff."). According to the complaint, the Weis Earth Sciences Museum was established in late 1999 or early 2000 by an express or implied agreement between Leonard Weis, Dean Perry, and the Board of Directors of the Foundation, which is a philanthropic organization that supports UWFox. (Compl. ¶ 17.) The museum was initially operated as an unincorporated nonprofit association pursuant to Chapter 184 of the Wisconsin Statutes "for the purpose of collecting, displaying, purchasing, and selling various minerals and related materials and educating the public . . . ." (Compl. ¶ 3.) On October 25, 1999, the Winnebago County Board of Supervisors passed a resolution authorizing the construction of the Museum wing of the UWFox campus using only donated funds, primarily from Leonard Weis. The resolution provided that "[u]pon completion of the museum and classroom space, the facilities will become the joint property of Winnebago and Outagamie County." (Compl. ¶¶ 18, 19.) The

2

donations that were to be made by Weis and others for the benefit of the museum were to be funneled through the Foundation for tax purposes but were to be used "for the specific benefit of the then-unincorporated non-profit association known as the Weis Earth Science Museum." (Compl. ¶ 20.) In addition, the Museum is the Foundation's sole beneficiary for all mineral collections and donations related to the Museum. (Compl. ¶ 14.)

Weis prohibited his donations from being owned or used for the benefit of UWFox or the UW System. Weis' donations were also conditioned upon the Museum being operated independently of UWFox except for certain cooperative agreements. One such agreement concerned the Museum Director. Weis agreed to pay the salary of the Director and established an endowment that made periodic payments to the Foundation that were to be used for that purpose. The Director was to be employed by UW System, however, so that he would be eligible for health care and other employee benefits from the State. Notwithstanding this arrangement, the Museum Director was recognized as an employee of the Museum who was hired by the Museum's Board of Directors. (Compl. ¶¶ 21, 22, 24, 25.)

For the first ten years, the Museum operated as an independent unincorporated non-profit association. Significant decisions concerning the Museum's operations were made by the Museum Director, subject to the approval of the Museum's Board of Advisors. Prospective donors to the Museum were instructed to make their donations via the Foundation for tax purposes, but the funds would then be turned over to the Museum Director who would then send thank you letters on Museum stationary acknowledging the donations and noting that the money would be used for tax exempt purposes. Pursuant to another cooperative agreement, the UWFox treasurer maintained the Museum's funds in segregated financial accounts used only for the benefit of the Museum. In sum,

3

the complaint alleges that the Museum building, financial accounts, exhibits, specimens, intellectual property, and other assets are owned by the Museum or the Foundation for the benefit of the Museum. (Compl. ¶¶26-31.)

The State Defendants see things differently. In the course of an exchange of letters between the parties in the spring of 2010, the State Defendants took the position that the Museum's holdings are in their entirety owned by the UW System and that the Board of Regents asserts full control over the Museum's affairs. (Compl. ¶ 33.) At Dean Perry's direction in May of 2010, UWFox began cataloguing the Museum's assets, including the collections and specimens. He directed the Museum to use the UWFox's purchasing procedures and ordered the Museum Director to place the UWFox logo on the Museum's letterhead and website. In June 2010 Perry instructed the Museum Director to cease all communication with the Museum's Board of Directors. (Weis Earth Science Museum, Inc., was formed in March 2010, and was assigned all interests, assets, claims, and rights of the unincorporated association.) On July 1, 2010, Dean Perry directed UW System accountants to audit the Museum's accounts and accounting procedures. Finally, the Museum Director was furloughed and a portion of the payments made by the endowment Weis established to pay his salary were used for non-Museum purposes. (Compl. ¶¶ 34-40.)

Based on these allegations, Plaintiffs have asserted claims against Dean Perry and the Board of Regents for unconstitutional taking without compensation, conversion, and unjust enrichment. Additional claims for breach of contract, and promissory estoppel are asserted against the Foundation, as well as Dean Perry and the Board of Regents, and a claim seeking the imposition of a constructive trust on the Museum assets is asserted against the Board of Regents and the Foundation. Finally, Plaintiffs have listed as separate claims a request for punitive damages (Fifth

4

Cause of Action), a request for an injunction enjoining the defendants from disposing of Museum assets (Sixth Cause of Action) and a request for a declaration of the Museum's right to possession and control Museum assets and funds donated for its use, and to operate at its present location in perpetuity (Seventh Cause of Action).

Plaintiffs' assertion of separate claims for punitive damages, and injunctive and declaratory relief are confusing. Punitive damages, injunctions and declarations are forms of relief or remedies, not stand-alone claims, and a plaintiff's right to any one of these remedies is dependent on proof of a cognizable claim or a legal theory entitling him to such relief. A bare claim for injunctive relief apart from the legal claim or theory which entitles one to such relief is not cognizable. *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 (7th Cir. 2011) ("This technique of recasting a straightforward claim for damages as a claim for damages and injunctive relief runs into trouble on some basic principles of common law—most fundamentally that a claim of injury is not cognizable unless it results from the breach of a recognized legal duty owed to the plaintiff."). Plaintiffs concede there is no basis for an award of punitive damages, so that claim will be dismissed outright. In an effort to clarify the case, the requests for injunctive and declaratory relief will also be dismissed as separate claims but will remain in the complaint as part of the *ad damnum* clause or prayer for relief.

The motion to dismiss filed by the State Defendants, as noted above, is directed to the complaint in its entirety against Dean Perry, and only to the non-takings claims against the Board of Regents. With respect to these claims, the State Defendants argue the Board of Regents is immune from suit under the Eleventh Amendment to the United States Constitution and Article IV, section 27 of the Wisconsin Constitution. As to Dean Perry, they argue that the contract-related

claims fail as a matter of law and that the conversion claim should be dismissed because Plaintiffs

failed to properly serve him with a notice of claim as required under Wis. Stat. § 893.82.

## II. ANALYSIS

### A. Claims Against the Board of Regents

The State Defendants first argue that Plaintiff's claims against the Board of Regents are

barred by the Eleventh Amendment. The Eleventh Amendment states: "The Judicial power of the

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign

State." U.S. Const. amend. XI. The Amendment reflects the system of federalism so much a part

of the structure of the government:

> The very object and purpose of the 11th Amendment were to prevent the indignity
> of subjecting a State to the coercive process of judicial tribunals at the instance of
> private parties. . . . . The Amendment is rooted in a recognition that the States,
> although a union, maintain certain attributes of sovereignty, including sovereign
> immunity. . . . It thus accords the States the respect owed them as members of the
> federation.

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1984). Thus, the

sovereign immunity recognized by the Eleventh Amendment bars suits against States "regardless

of the relief sought." *Id.* It also extends to state agencies, such as the Board of Regents and the

University of Wisconsin. *Kroll v. Board of Trustees of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir.

1991). The State Defendants' argument that they are immune from suit under the Eleventh

Amendment to the United States Constitution fails here, however, because they have waived the

protection afforded by the Eleventh Amendment by removing the case to federal court. *See Lapides*

*v. Board of Regents of University System of Georgia*, 535 U.S. 613, 624 (2002) ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity"). To the extent dismissal is sought under the Eleventh Amendment, the motion is therefore denied.

The fact that the State Defendants waived Eleventh Amendment immunity does not fully dispose of the issue. For the State Defendants also argue they are immune from suit under Art. IV, Section 27 of the Wisconsin Constitution. The Seventh Circuit has repeatedly noted that "state rules of immunity are binding in federal court with respect to state causes of action." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991); *see also Omosegbon v. Wells,* 335 F.3d 668, 673 (7th Cir. 2003)*; Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir.1996).

The foundational state rule of sovereign immunity in Wisconsin is set forth in Article IV, section 27 of the Wisconsin Constitution, which reads: "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." "This language has been construed repeatedly to mean that unless the Wisconsin Legislature consents to a suit against the state sovereign immunity will apply." *State v. P.G. Miron Const. Co., Inc.*, 181 Wis.2d 1045, 1052, 512 N.W.2d 499, 503 (1994); *see also Brown v. State,* 602 N.W.2d 79, 84 (Wis. App. 1999) ("[c]onsent to suit must be expressly granted by the legislature."). "If the legislature has not done so, then sovereign immunity, if properly raised, deprives the court of personal jurisdiction over the State and its agencies." *Id.* (citing *Lister v. Board of Regents*, 240 N.W.2d 610, 617 (Wis.1976)).

The Wisconsin legislature has given consent to suits brought against it for a certain class of claims:

> Actions against state; bond. Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

Wis. Stat. 775.01 (2009-10). The Wisconsin Supreme Court has construed this statute to apply to only a narrow class of claims. "The statute applies only 'to claims which, if valid, render the state a debtor, and not to equitable claims or claims for tort.'" *Trempealeau County v. State*, 260 Wis. 602, 606, 51 N.W.2d 499 (1952) (quoting *In re Wausau Inv. Co.*, 163 Wis. 283, 158 N.W. 84 (1916)); *see also Boldt v. State*, 101 Wis.2d 566, 572-73, 305 N.W.2d 133 (1981); *Cords v. State*, 62 Wis.2d 42, 50, 214 N.W.2d 405 (1974).

Moreover, as to those claims on which suit against the state is allowed, the claimant must, as a condition precedent to commencing an action against the state, present a claim to the state Claims Board, which first holds a hearing and then makes a recommendation to the legislature to grant or deny the claim. *Erickson Oil Products, Inc. v. State*, 184 Wis.2d 36, 53, 516 N.W.2d 755 (Ct. App. 1994). If the legislature refuses to allow a claim, the claimant may then commence an action against the state pursuant to Section 775.01. *Id.* Failure to comply with this procedure, on the other hand, requires dismissal of the claimant's action. *Lister*, 72 Wis. 2d at 297 ("Where the state has consented to suit upon certain conditions, compliance with those conditions is jurisdictional and a suit may not be maintained against the state in the absence of such

8

compliance."); *see also Sehlin v. State*, 256 Wis. 495, 500-01, 41 N.W.2d 596 (1950); *CleanSoils Wisconsin, Inc. v. State Dept. of Transp.*, 229 Wis.2d 600, 609, 599 N.W.2d 903 (Ct. App. 1999).

It follows from the foregoing that Plaintiffs' non-takings claims against the Board of Regents must be dismissed. Plaintiffs' claim for conversion is barred because conversion is a tort, and the Wisconsin legislature has not consented to be sued in tort. *See Carlson v. Pepin County,* 167 Wis. 2d 345, 356, 481 N.W. 2d 498 (Ct. App. 1992) ("The State has not given statutory consent to suit in tort."). Plaintiffs' claims for breach of contract, promissory estoppel and unjust enrichment sound in contract or quasi-contract. The Wisconsin legislature has waived the state's immunity from suit to enforce certain contractual rights and it is also arguable that at least Plaintiffs' claim for unjust enrichment also falls within the class of claims allowed under Section 775.01. *See Boldt*, 101 Wis. 2d at 573-74 (holding that claim for equitable remedy based on the theory that the state held the funds at issue in a constructive trust sufficient to fall within class of claims allowed under § 775.01). But because Plaintiffs never submitted any of their contract-related claims to the Wisconsin Claims Board pursuant to Section 16.007 of the Wisconsin Statutes, those too are barred. Finally, the Wisconsin legislature has consented to suits brought to determine a party's interest in real property. *See* Wis. Stat. § 775.10 (providing that the state may be made a party defendant in any action for a declaration of interests in real property under § 841.01). But that section expressly states that "no judgment for the recovery of money or personal property or costs shall be rendered in any such action against the state." *Id.* The State Defendants' motion seeking partial summary judgment will therefore be granted, and all of the non-takings claims against the Board of Regents will be dismissed.

9

**B. Claims Against Defendant Perry**

Plaintiffs have also asserted several claims against Dean Perry, including unconstitutional taking, conversion, unjust enrichment, breach of contract, and promissory estoppel. Plaintiffs concede that the takings claims under the state and federal constitutions, which concern the use of the governmental power of eminent domain, do not apply to Dean Perry (Pl.'s Opp. at 6), and they will therefore be dismissed. As to the remaining claims, the State Defendants argue that Plaintiffs' claims sounding in contract and quasi contract fail to state a claim against Dean Perry and should be dismissed.

The Court agrees. It is clear from the complaint that with respect to any agreement entered into with the Plaintiffs, Dean Perry was acting on behalf of the University, not for any private purpose. It is well established that "where an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to the other contracting party." *Benjamin Plumbing, Inc. v. Barnes*, 162 Wis.2d 837, 848, 470 N.W.2d 888 (1991) (citing *Theuerkauf v. Sutton*, 102 Wis.2d 176, 188, 306 N.W.2d 651 (1981); *Hooper v. O.M. Corwin Co.*, 199 Wis. 139, 146, 225 N.W. 822 (1929)). Thus, even if Plaintiffs can establish the existence of a contract, Dean Perry was not a personally a party and thus would have no liability for breach.

The same is true of Plaintiffs' claims for promissory estoppel and unjust enrichment. Any promises made by Dean Perry were made in his capacity as dean, not as an individual, and the only party that was conceivably enriched as a result of the transaction, was the University. There is no allegation that Dean Perry benefitted personally from the decision to assert authority over the Museum and its assets. Based on these facts as alleged in the complaint, there is no basis in equity

10

to impose liability on Dean Perry. Accordingly, Plaintiffs' claims for breach of contract, unjust enrichment and promissory estoppel will be dismissed.

That leaves Plaintiffs' claim against Dean Perry for conversion. Section 893.82 of the Wisconsin Statutes governs the procedure for asserting tort actions against state employees. A claimant must serve the attorney general with a written notice of claim within 120 days of the event giving rise to the civil action and notice must be served by certified mail. Wis. Stat. § 893.82(3), (5). Strict compliance with these statutory requirements is required. Wis. Stat. § 893.82(2m). Defendants argue that Plaintiffs failed to strictly comply with this statute in two ways, either of which warrants dismissal: the notice of claim was not served on time and it was not served via the proper method of service.

Regarding timeliness the parties dispute what constitutes the "event giving rise to the civil action" under Wis. Stat. § 893.82(3). On the one hand, Defendants contend that the Plaintiffs' cause of action stems from events occurring in the middle of 2009 when "Perry began to hint that the System's Fox Valley campus would begin to take over and assert control over the Museum and its assets." (Compl. ¶32.) Plaintiffs argue that the "event… giving rise to the civil action" was not Perry's hinting at taking control of the assets but rather when Perry actually asserted control over the assets in dispute after March 24, 2010. *See* Wis. Stat. § 893.82(3). This latter date is within the 120 day window. Plaintiffs' position comports with the general rule in Wisconsin that the time to file a notice of claim runs from the date of the injury, not the date on which the claimant discovers the injury. *Oney v. Schrauth,* 197 Wis. 2d 891, 899-900, 541 N.W.2d 229, 231-32 (Ct. App. 1995). In light of the allegations in the complaint, I am not persuaded that Perry's hinting at a change in asset control constitutes an "event giving rise to the [Plaintiff's] civil action." The injury, if any,

11

occurred when Perry actually asserted control over the assets. For these reasons Moving Defendants have failed to show that Plaintiffs' notice of claim was untimely.

Defendants further argue that the manner in which Plaintiffs' notice was served was improper. Plaintiffs personally served the Attorney General with notice of claim. (Doc. 4-2.) The statute states, however, that the notice "shall be served on the attorney general at his or her office in the capitol by certified mail." Wis. Stat. § 893.82(5). The State Defendants argue that personal service does not constitute strict compliance, and the claim must therefore be dismissed.

Certified mail is "mail for which the sender requests proof of delivery in the form of a receipt signed by the addressee." Black's Law Dictionary 963 (7th ed. 1999). The Notice of Claim served by Plaintiffs on the Attorney General bears a receipt of copy and acknowledgment stamp that appears to have been signed by the Attorney General or his designee. (It also appears to have been served on the Attorney General at his office at the Risser Office Building where the Wisconsin Department of Justice is housed, as opposed to the Capitol as the statute requires, but the State Defendants do not object on that ground.) The State Defendants argue that "the certified mail requirement facilitates the identification of that particular type of legal filing" (Reply at 6), but offer no explanation why signing a receipt for an envelope delivered by a U.S. Postal employee is different from signing an acknowledgment of receipt on a copy of a notice of claim delivered by a deputy sheriff or other process server. Seeing no difference between the two, I conclude that Plaintiffs strictly complied with the notice of claim statute.

The Wisconsin Court of Appeals addressed a similar issue in *Patterson v. Board of Regents of University of Wisconsin System,* 103 Wis.2d 358, 309 N.W.2d 3 (Ct. App. 1981). There the issue was the use of registered mail instead of certified mail specified in the statute. The Court observed:

12

"The primary purpose behind the requirement of certified mail is to ensure delivery and to easily determine the date of delivery. Registered mail fulfills this purpose to an even greater degree." *Id.* at 360. While *Patterson* dealt with service in the context of a different state statute, the rational is equally applicable here: "[a]lthough we agree that strict compliance . . . is required . . . we conclude that a stricter compliance than the statue demands is not necessarily a failure to strictly comply. Such a reading would lead to an absurd and unjust result, and we reject such a construction." *Id.* at 360-61. Here Plaintiffs' use of personal service fulfills the purpose behind the certified mail requirement in the notice of claim statute, and the State Defendants have failed to explain how the service effected in this case differs, other than in name, from the form of service specified in the statute.

I conclude that the Plaintiffs strictly complied with the notice of claim statute. The State Defendants have failed to show that Plaintiffs' notice of claim was untimely or improperly served. Accordingly the motion to dismiss the conversion claim against Perry will be denied.

## C. Injunctive and Declaratory Relief

Plaintiffs also argue that even if the State Defendants are immune from liability for damages on some of the claims asserted, Plaintiffs still may be entitled to declaratory or injunctive relief. They note that there are exceptions to the bar of sovereign immunity where the only relief sought is for declaratory or injunctive relief. An action for declaratory relief will lie, for example, against state officials and agencies to resolve controversies as to the constitutionality or proper construction and application of statutory provisions. *Lister*, 72 Wis.2d at 303 (noting that "the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of

13

statutory provisions."). And injunctive relief is available where it is needed to prevent a state actor or agency from taking action beyond its constitutional or jurisdictional authority. *Id.*

Neither exception is applicable to the claims on which I have found the defendants immune, however. Plaintiffs do not seek in those claims a declaration as to the constitutionality or proper construction of any statutory provision, and they do not seek to prevent a state actor or agency from taking action beyond its constitutional or jurisdictional authority. The dispute between the parties is over the ownership and control of Museum assets, not the authority of the state agency involved. This is not the kind of dispute that the exceptions carved out of the state's sovereign immunity for injunctive and declaratory relief were created to address.

## CONCLUSION

For the reasons set forth above, the motion to dismiss (Dkt. 2) is **granted in part**. Specifically all claims except the takings claims are dismissed as to the Board of Regents, and all claims except the conversion claim are dismissed as to Dean Perry.

**SO ORDERED** this ___27th___ day of July, 2011.

s/ William C. Griesbach
William C. Griesbach
United States District Judge